CC-97-444                                                      1

En el Tribunal Supremo de Puerto Rico

| Ricardo Domínguez Talavera<br>      Recurrente<br><br>                V.<br><br>Caguas Expressway Motors, Inc.<br>Velco, Inc.<br>Ford Motor Co.<br>Caribbean, Inc.<br>      Recurridos | Certiorari<br><br>99TSPR80 |
| --- | --- |

Número del Caso: CC-97-444

Abogado de Ricardo Domínguez Talavera: Lcdo. F. Ariel Avilés Rodríguez

Abogado de Ford Motor Co.: Lcdo. Manuel González Gierbolini

Abogado de Caguas Expressway Motors, Inc.: Lcdo. Agustín Mangual

Abogado de Velco, Inc.:  Lcdo. José Ricardo Díaz Ríos

Agencia Administrativa: DACO

Tribunal de Circuito de Apelaciones: Circuito Regional I San Juan

Juez Ponente: Hon. Rossy García

Fecha: 5/24/1999

Materia: Revisión Administrativa

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ricardo Domínguez Talavera

   Demandante y Recurrente

   v.                                    CC-97-444          Certiorari

Caguas Expressway Motors, Inc.,
Velco, Inc.Ford Motor Co.
Caribbean Inc.

   Demandado y Recurridas

PER CURIAM

San Juan, Puerto Rico a 24 de mayo de 1999.

El Sr. Ricardo Domínguez Talavera nos solicita que revisemos una Sentencia emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional I de San Juan, mediante la cual se revocó una decisión del Departamento de Asuntos del Consumidor que había ordenado la resolución de un contrato de compraventa de un vehículo de motor llevado a cabo por las partes del caso de epígrafe. Procede revocar la Sentencia emitida por el Tribunal de Circuito de Apelaciones y confirmar la Resolución del Departamento de Asuntos del Consumidor.

I

Según los documentos que forman parte del expediente de este caso, el 8 de agosto de 1993, Vehicle Equipment Company, Inc. ("VELCO"), compró a

Caguas Expressway Motors, Inc. ("Caguas Expressway") un vehículo nuevo marca Ford, modelo Club Wagon del año 1993, por el precio de $32,000.00. El mismo día, VELCO arrendó dicho vehículo al Sr. Ricardo Domínguez Talavera, mediante un contrato de arrendamiento financiero abierto ("open end"). De conformidad con la cláusula número 14 de dicho contrato, VELCO cedió al arrendatario el derecho de reclamación frente al fabricante, bajo las disposiciones del contrato de garantía.[1]

Antes de la entrega del vehículo al Sr. Domínguez Talavera, Caguas Expressway realizó labores en el vehículo para corregir defectos en el control de velocidad constante ("cruise control") y reparar la manga de aire del asiento con apoyo lumbar ("lumbar seat"). También reemplazó la rueda del guía. Corregidos estos defectos, se le entregó el vehículo nuevo a Domínguez Talavera. Durante el siguiente mes Domínguez Talavera tuvo que llevar el vehículo a Caguas Expressway en dos ocasiones para que repararan una serie de defectos.[2]

----

[1] La cláusula núm. 14 establece:

> "Lessor shall permit Lessee to enforce in Lessee's own name any and all warranties made by the manufacturer ofeach unit, but Lessor assumes no responsability for compliance therfor by the manufacturer."

[2] Según surge de las determinaciones de hechos en la resolución de DACO, el 17 de agosto de 1993 – ocho días después de serle entregado el vehículo – el Sr. Domínguez Talavera, lo llevo a Caguas Expressway para la corrección de los siguientes defectos: a) acondicionador de aire no enfría; b) ambos parachoque ("bumpers") y asiento trasero tienen moho; c) ruido en tren delantero, aparentemente "calipper"; d) fallo en el motor; e) control de velocidad constante ("cruise control") no funciona ocasionalmente; f) enciende algo por debajo de la unidad. El vehículo le fue devuelto al Sr. Domínguez Talavera, luego de ser evaluado y

Al persistir los defectos, Domínguez Talavera presentó una querella ante el Departamento de Asuntos del Consumidor ("DACO") contra Caguas Expressway, Ford Motor Company y VELCO y solicitó como remedio el cambio del vehículo por otro nuevo o la resolución del contrato.

A raíz de la querella presentada el Sr. Julio Morales, técnico de DACO, inspeccionó el vehículo junto al Sr. Néstor Torres de Caguas Expressway y el Sr. Domínguez Talavera. Durante la inspección, Domínguez Talavera "manifestó" que él no interesaba el vehículo y solicitaba el cambio de la unidad.

Como Caguas Expressway no estuvo de acuerdo con cambiar la unidad, DACO celebró una vista administrativa para dilucidar la querella. Durante dicha vista, Domínguez Talavera y Caguas Expressway llegaron a un acuerdo según el cual esta última corregiría todos los problemas del vehículo que habían sido señalados.[3] Además, DACO inspeccionaría el vehículo antes de devolvérselo.

---

reparado. Sin embargo el 31 de agosto de 1993 el vehículo tuvo que ser llevado nuevamente Caguas Expressway para la corrección de los siguientes defectos: a) control de velocidad constante ("cruise control") no funciona; b) ruido en el tren delantero; c) fallo de motor y gasta mucha gasolina; ruido en lado izquierdo del "dash" (cuando pasa por carretera irregular); acondicionador de aire no enfría; d) ambos parachoques ("bumpers") están mohosos; e) espejos retrovisores no funcionan adecuadamente; f) ruido por debajo, como si se activara algo; g) ruido al subir y bajar el cristal del lado del conductor; h) al encender por la mañana presenta fallo; i) bonete descuadrado; j) vibración a alta velocidad; k) motor trabaja caliente; l) ruido que aparenta ser de correas o en el "clutch" frío.

[3]  La lista completa de los defectos señalados por el querellante y que, a raíz de la vista, Caguas Expressway se comprometió a corregir es la siguiente: a) oxido en los parachoques ("bumpers"); b)cuero del guía está roto; c) ruido en el cristal del lado del conductor; d) control del asiento del lado del conductor (que es eléctrico) está

La reparación del vehículo tomó alrededor de treinta (30) días. Concluida la misma, el técnico de DACO inspeccionó el vehículo y determinó que subsistían los siguientes defectos mecánicos:  1) problemas en los frenos delanteros; 2) ruido en la puerta del conductor al subir y bajar el cristal, y 3) goteo de aceite por la tuerca de la manga de presión del sistema auxiliar del volante ("power steering").  Se acordó que el técnico de DACO verificaría la reparación de éstos tres problemas antes de la entrega del vehículo al querellante.

Un mes después de dicha inspección el técnico de DACO revisó nuevamente el vehículo y encontró una filtración de aceite en el sistema auxiliar del volante ("power

---

defectuoso;  e)  vibración cuando va a alta velocidad; f) ruido y "lift" en el sistema auxiliar del volante ("power steering"); g) ruido y filtración de aceite de la unidad auxiliar del volante ("power steering"); h) espejos retrovisores no funcionan adecuadamente; i) filtración de aceite del acondicionador de aire, la unidad delantera sólo funciona en velocidad máxima ("high") y presenta mal olor; j) bomba de gasolina se activa sola (aunque el vehículo esté apagado); k) vibración en el sistema de frenos cuando el vehículo está detenido, fuerte ruido en la parte delantera; l) motor se calienta (trabaja muy caliente; gasta mucha gasolina y quema combustible crudo ya que expide humo negro por el tubo de escape ("muffler"); m) problema de encendido por la mañana, luego que se calienta se estabiliza; n) correa delantera del sistema del motor suena mucho por las mañanas; si pasa por "baches" en la carretera la correa comienza a patinar, el guía se pone pesado y difícil de manejar; o) el seguro automático (que es eléctrico) de la puerta de cargo se siente como si el sistema estuviese suelto (puerta lateral derecha); p) ruido en la transmisión cuando frena, da un golpe, al arrancar produce nuevamente el golpe; q) alineación está fuera de las especificaciones; r) "power point" localizado detrás del asiento del conductor no funciona; s) armazón de metal del asiento trasero está oxidado; t) sistema de control de velocidad constante ("cruise control") funciona en ocasiones; u) ruido en el panel de instrumentos ("dash") (como si fuera un pajarito); v) descuadre del bonete delantero.

steering"). En el informe el inspector de DACO señaló que notaba los frenos parando correctamente, pero que Domínguez Talavera, insistía que estaban vibrando.[4] En esta ocasión él rehusó dejar el vehículo en Caguas Expressway y se lo llevó.

Así las cosas el querellante solicitó la celebración de otra vista administrativa, en torno a su querella. Surge de la Resolución de DACO que en la vista testificaron el Sr. Julio Morales, técnico automotriz de DACO y el Sr. Mario Burgos, perito del querellante entre varios otros testigos.

Concluida la vista, DACO emitió resolución mediante la cual determinó que Caguas Expressway y Ford Motor Company debían reembolsar solidariamente a Domínguez Talavera todas las mensualidades pagadas por éste a VELCO en concepto del canon de arrendamiento financiero. Además, ordenó que las compañías relevaran a Domínguez Talavera del remanente de la deuda por concepto del contrato de arrendamiento financiero, que ascendía a la suma de $5,796.00.

Ambas compañías presentaron mociones de reconsideración, las cuales fueron denegadas. Caguas Expressway y Ford Motor Company presentaron recursos de revisión en el entonces Tribunal Superior, Sala de San Juan, los cuales fueron remitidos posteriormente al Tribunal de Circuito de Apelaciones de conformidad con el Art. 9.004 de la Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 del 25 de diciembre de 1995.

El Tribunal de Circuito de Apelaciones después de haber ordenado la consolidación de ambos recursos de revisión dictó la sentencia que es objeto del presente recurso. Determinó, en lo esencial, que el dictamen de DACO "no

---

[4] El Sr. Domínguez Talavera era quien iba conduciendo.

encuentra apoyo ni está sostenido por la evidencia sustancial obrante en el expediente administrativo, y resulta contrario a derecho". Por lo tanto, concluyó el Tribunal, "la decisión recurrida no puede prevalecer".

Inconforme, Domínguez Talavera acude ante nos mediante *certiorari*. Examinada la petición, le concedimos a las empresas recurridas un término para que comparecieran y mostraran causa por la cual no debíamos revocar la sentencia dictada por el Tribunal de Circuito de Apelaciones. Habiendo comparecido las dos empresas, resolvemos según intimado sin procedimientos ulteriores.

## II

En síntesis, el querellante-peticionario plantea (1) que el Tribunal de Circuito de Apelaciones intervino con las determinaciones de hecho del foro administrativo especializado, sustituyendo arbitrariamente la apreciación de dicho organismo por sus apreciaciones particulares; y (2) que el Tribunal tampoco dio deferencia a las conclusiones de derecho de DACO al concluir que no existían los vicios ocultos que justificaran la resolución del contrato. Ambas cuestiones están íntimamente relacionadas. Veamos.

El Departamento de Asuntos del Consumidor fue creado con el propósito primordial de vindicar e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5 del 23 de abril de 1973, conocida como Ley Orgánica del Departamento de Asuntos del Consumidor, 3 L.P.R.A. sec. 341 b. El Secretario de DACO tiene el poder de investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Art. 6 (c) de la Ley Núm. 5, supra, 3 L.P.R.A.

sec. 341 e (c). Posteriormente se aprobó la Ley Núm. 7 del 24 de septiembre de 1979, conocida como Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2051 et seq., con el propósito de "velar por que los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor". Art. 33 de la Ley Núm. 7 de septiembre 24 del 1979, 10 L.P.R.A. sec. 2053. Esta ley en su artículo 13 faculta a DACO para adoptar reglamentos para implantar los propósitos de dicha ley. El Artículo 26.3 del Reglamento de Garantías de Vehículo de Motor[5] creado en virtud de esta facultad establece lo siguiente:

> 26.3    OPORTUNIDAD RAZONABLE PARA REPARAR DEFECTOS-
>      El Departamento, podrá a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. **Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso."** (énfasis nuestro)

El Artículo 34 hace referencia igualmente a las disposiciones del Código Civil:

> "Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que, le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios

---

[5]   Reglamento Núm. 4797, aprobado el 28 de septiembre 1992 que derogó el Reglamento Núm. 1560 que había sido aprobado el 23 de mayo de 1972.

ocultos y la acción redhibitoria que reconoce el
Código Civil de Puerto Rico."

Como expresó correctamente el Tribunal de Circuito de
Apelaciones, las determinaciones de DACO al actuar sobre
estas cuestiones deben de estar en armonía con las
disposiciones pertinentes del Código Civil y de la
jurisprudencia interpretativa de las mismas.

Todo vendedor de un bien mueble o inmueble está
obligado a la entrega y saneamiento de la cosa objeto de la
venta. Artículo 1350 del Código Civil, 31 L.P.R.A. sec.
3801. Por lo que el vendedor no cumple sólo con entregar la
cosa objeto del contrato, sino que también tiene que
garantizar al comprador la posesión pacífica y útil de la
misma. Este deber de garantía es conocido en el derecho de
contratos con el nombre de saneamiento por evicción
(perturbación jurídica del derecho dominical adquirido) y
saneamiento por vicios ocultos (perturbación económica de la
posesión de la cosa).[6] Ambas facetas del saneamiento están
consignadas expresamente en el Artículo 1373 del Código
Civil, 31 L.P.R.A. sec. 3831.

El saneamiento por vicios ocultos o la redhibición es
aquella situación que se produce cuando, después de
verificada la entrega, se observa en la cosa vendida vicios
ocultos que la hacen impropia para los usos a que se destina
o disminuyen de tal modo su utilidad que, de haberlos
conocidos el comprador, no la hubiese adquirido o habría
dado menos precio por ella.

---

[6] Véase F. Puig Peña, Compendio de Derecho Civil Español,
III; Ediciones Pirámide, Madrid 1976, págs. 476 y ss.

Para que proceda la acción redhibitoria son necesarias las siguientes circunstancias: a) Que la cosa adolezca de un vicio; b) Que este vicio sea grave: que el vicio haga a la cosa impropia para el uso a que se la destina, o que disminuya de tal modo su utilidad que, de haberlo conocido el comprador, no la hubiese adquirido o hubiese dado menos precio por ella; c) Que sea oculto; d) Que sea preexistente a la venta; e) Que se ejercite la acción en el plazo legal, que es de seis meses contados desde la entrega de la cosa vendida.

En resumen, si una vez verificada la entrega, se demuestra el incumplimiento por parte del vendedor de garantizar la plena posesión económica de la cosa vendida, el comprador tiene a su favor una pretensión de redhibición.[7]

Hemos resuelto anteriormente que no son vicios redhibitorios o cuantiminosos aquellos defectos que no exceden de la medida de las imperfecciones menores que cabe esperar normalmente en un producto determinado. Asimismo hemos resuelto que no se requiere que el defecto imposibilite el uso de la cosa; basta con que merme notablemente su valor. DACO v. Marcelino Mercury, 105 D.P.R. 80 (1976).

A los fines de resolver la procedencia de la acción redhibitoria, hemos adoptado igualmente el criterio de que la apreciación de la importancia de los defectos, es esencialmente una **cuestión de hecho**, por lo que el foro de instancia está en mejor posición para hacer esta apreciación

---

[7] F. Puig Peña, *Id.* pág. 489. Véanse E. Vázquez Bote, Tratado Teórico Práctico y Crítico de Derecho Privado Puertorriqueño, I, Equity Pub. Co., 1992, pág. 174 y ss. J. Puig Brutau, Fundamentos de Derecho Civil, Tomo III, Volumen II, Bosch, Barcelona 1982, pág. 193 y ss.

que los foros apelativos. Por lo tanto, se justifica nuestra intervención con la discreción del juzgador sólo en aquellos casos en que se demuestre ausencia de prueba adecuada o error manifiesto en su apreciación. García Viera v. Ciudad Chevrolet, Inc., 110 D.P.R. 158 (1980); DACO v. Marcelino Mercury, supra.

Similar criterio es el que rige la revisión de una resolución administrativa. Reiteradamente hemos resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Los tribunales no deben de intervenir con las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Metropolitana S.E. v. Administración de Reglamentos y Permisos, res. el 10 de abril de 1995; La Facultad para las Ciencias Sociales v. C.E.S., res. el 2 de junio de 1993. Esta norma de origen jurisprudencial ha sido acogida estatutariamente en la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175.

Hemos reiterado que "para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su

consideración". (énfasis nuestro).  Metropolitana S.E. v. Administración de Reglamentos y Permisos, supra, Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953). Véase además, Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, res. el 30 de junio de 1998, 98 TSPR 86.  Si en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor. Ramírez Rivera v. Dept. de Salud, res. el 26 de marzo de 1999, 99 TSPR 42.

                                    III

Teniendo en cuenta los principios reseñados, debemos determinar si Caguas Expressway y Ford Motor Company presentaron la prueba requerida por nuestro ordenamiento administrativo para menoscabar el valor probatorio de la evidencia en que se basaron las determinaciones de hecho de la agencia.

Le correspondía a Caguas Expressway y a Ford Motor Company demostrar que existía otra prueba en el récord administrativo que reducía o menoscaba el valor probatorio de la prueba en la cual se fundamentaron las determinaciones de hecho de la agencia.  Sin embargo, en el caso de autos Caguas Expressway y Ford Motor Company se limitaron a señalar que los informes del técnico de DACO, Sr. Julio Morales, del 26 de mayo de 1994 y el 21 de junio de 1994 demostraban que a juicio de éste subsistía tan solo un defecto en el vehículo al momento de su última inspección. Acompañaron, para fundamentar su alegación copia de los informes que había preparado este técnico. Basándose en

estos informes el Tribunal de Circuito de Apelaciones determinó que no existían vicios redhibitorios en el automóvil del Sr. Domínguez Talavera al momento en que DACO emitió su resolución. Erró.

Tras analizar detenidamente los informes del técnico de DACO y la resolución objeto de revisión, determinamos que estos informes evidentemente no menoscaban el valor probatorio de la prueba creída por DACO y a base de las cuales hizo sus determinaciones de hecho. De la propia resolución de DACO surge que este técnico al testificar en las vistas admitió no haber conducido el vehículo, por lo que no podía detectar si los frenos funcionaban adecuadamente.

Así mismo surgen de la resolución al menos dos inspecciones adicionales del vehículo. Una de estas inspecciones por "personal especializado" reveló que el vehículo tenía un problema de desalineación tan grave que desgastaba excesivamente los neumáticos. Otro técnico automotriz el Sr. Mario Burgos también inspecciono el vehículo el 15 de noviembre de 1994. Este técnico llevó a cabo una inspección visual del vehículo además de conducirlo en una prueba de carretera. Este detalló al menos seis (6) defectos[8] que subsistían en el vehículo luego de cuatro (4)

---

[8] Los defectos que encontró el técnico automotriz, Sr. Mario Burgos, son: a) sistema de control de velocidad constante ("cruise control") no funciona; b)filtración hidráulica en la unidad auxiliar del volante ("power steering"); c)falta aislador de la parte baja (inferior) del motor la cual permite que salpique agua de la carretera a la correa y la misma patine; d)inestable en frenadas a altas velocidades;

intentos de reparación y más de 60 días en los talleres de Caguas Expressway. Observamos que esta inspección se llevó a cabo en una fecha posterior a la última vez que el técnico de DACO, Sr. Julio Morales inspeccionó el vehículo.

Al finalizar el proceso de vistas[9] DACO concluyó que subsistían al menos siete (7) defectos[10] que Caguas Expressway había intentado reparar sin éxito. DACO apreció que estos defectos eran de carácter redhibitorio.

Caguas Expressway y Ford Motor Company no señalaron evidencia alguna obrante en el expediente administrativo que tuviese el efecto de menoscabar esta prueba. Los informes de un técnico, que ni si quiera condujo el vehículo y que no fue el último en inspeccionarlo, no constituye la prueba requerida en este caso para activar la intervención judicial. Por lo tanto, erró el Tribunal de Circuito de

---

d)frenado no es totalmente efectivo al cabo de operar el vehículo por un tiempo prolongado e) luego de estar en tránsito congestionado por un periodo prolongado; f) diámetro de los pernos (tornillos) de la base de los "calippers" no son cónsonos con el diámetro de los orificios donde se alojan (el claro o "clearance" entre uno y otro excede en tamaño) lo cual causa fuerte ruido en la parte baja del vehículo en pavimento irregular, esta condición constituye un peligro evidente para los ocupantes del vehículo ya que eventualmente podría producir que el vehículo se quede sin frenos.

[9] Surge de los documentos suministrados por las partes que DACO llevo a cabo por lo menos tres vistas.

[10] Los defectos que subsisten según DACO son: a)filtración de aceite de "power steering"; b)"cruise control" no funciona; c)frenado deficiente, ruido en los "calippers"; d)se activa algo en el área de la bomba de gasolina (aunque el vehículo esté apagado) e)persiste mal olor de acondicionador de aire; f)correas patinan cuando vehículo pasa por charco de agua de la carretera; g) mecanismo de "power door lock" defectuoso (como si estuviera suelto).

Apelaciones al revocar la resolución de DACO. Procede revocar su Sentencia y confirmar la resolución de DACO.

Se dictará la sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ricardo Domínguez Talavera

   Demandante y Recurrente

   v.                                    CC-97-444        Certiorari

Caguas Expressway Motors, Inc.,
Velco, Inc.Ford Motor Co.
Caribbean Inc.

   Demandado y Recurridas

SENTENCIA


San Juan, Puerto Rico a 24 de mayo de 1999.


Por los fundamentos expuestos en la Opinión del Tribunal, la cual se hace formar parte integral de la presente Sentencia, se expide el auto solicitado y se revoca la Sentencia emitida por el Tribunal de Circuito de Apelaciones. Se confirma la Resolución del Departamento de Asuntos del Consumidor.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.



Isabel Llompart Zeno
Secretaria Tribunal Supremo